## LESSEE of CHARLES BROWN et al. v. WILLIAM STAYTON.

Supreme Court. Sussex. October 11, 1799.

*Wilson's Red Book, 246.*

*Bayard* and *Ridgely* for plaintiffs.  *Broom* and *Wilson* for defendant.

Defendant's counsel had taken defense for so much of defendant's patent, called "Puzzle," as lay westward of a patent to George Wallace, called "Wallace's Lot."

Plaintiffs' counsel exhibited a patent to George Wallace called "Wallace's Lot," 225 acres, dated August 19, 1755; a warrant of resurvey on same to George Wallace, dated March 20, 1776; George Wallace's will, dated December 16, 1786, proved January 4, 1787, devising his lands to his son, William Wallace, in tail, remainder to Sarah Smith and Nancy Brown (two of plaintiffs) as tenants in common.  A resurvey in Daniel Polk's handwriting, signed by Thomas White, not returned nor recorded, called also "Wallace's Lot," dated March 15, 1789, for seventy-five acres, part of land in dispute.  And also a deed, dated May 1, 1797, from Denard Short and wife and Bridget Wallace to Smith and Brown (plaintiffs), having no private examination.  This deed was not objected [to], though made after demise, which was December 4, 1796.  William Wallace died intestate without issue, leaving four sisters, Sarah and Nancy, who with their husbands, Smith and Brown, are plaintiffs on four demises, and Short's wife and Bridget, above named.  Plaintiff proved William Wallace's possession within twenty years and defendant's possession.

Defendant's counsel exhibited a warrant from Penn, located for David Polk's lands, older than plaintiff's resurvey warrant, and offered a survey, bearing date in 1781, made for Rhoad Shankland by Seth Griffith, duly recorded and executed by State Treasurer, but no Commissioner's certificate on it, which was proved by the Recorder and Mr. Hazzard and Mr. Cooper, two of the Commissioners, to have been the practice at that time.  Mr. Griffith was sworn and said he made the survey in 1792 at the request of Mr. Shankland, who by letter requested him to take a

survey made by John Polk, bearing date in 1781, and correct the same by allowing variation and laying it again on the ground; that he did so and also cast out some of the lands that had been included and went to some of the old boundaries of Wallace's Lot; the warrant was laid off its location, which would have been in Nanticoke Manor, which the warrant expressly forbid[s].

*Ridgely* and *Bayard* objected to the survey; it is not an original, it is a mere private *ex parte* survey, and such have been ruled not to be evidence; the survey was made in 1792, yet it bears date in 1781. The original survey only is evidence; this is not what it calls itself. The paper from which this was taken ought to be produced. This is an original or not; if original it was made in 1792, and then it does not affect us; if not an original, because the survey was made in 1781, eleven years before this paper, then it is no evidence.

*Wilson.* A warrant is an authority to the surveyor, which is executed only when the surveyor has made his return of his proceedings thereon to office. This paper is the only execution of the warrant having the surveyor's approbation and being recorded and followed by a patent; no objection can now be made to its competency. By a contrary doctrine; a surveyor would be prevented from correcting and completing his work and would be bound by his first attempts to locate a warrant. With regard to the date, it is constant practice, known to the court and every person conversant in surveying lands, that the return is always supposed to bear date, not of the day of making the plot, but of actually surveying the land; and the Board of Commissioners have directed a survey to bear several dates as to several parts of it according to the respective times of proceeding on such survey, to prevent injustice to adjoining claimants.

PER CURIAM. JOHNS, C. J. A majority of the Court are of opinion the paper is competent to go in evidence; we do not say it is decisive as to its location. It is evidence because of the custom here.

CLAYTON, J. This paper is dated in 1781, and a person swears it was done in 1792. I never can be of opinion that such a paper can be evidence.

Plaintiffs produced Jacob Hazzard, one of the Commissioners of Property, and John Russel, Recorder, to prove that Mr. Hughs and defendant were disputing about part of the land included in defendant's patent; that while Hughs had a *caveat* pending against a new survey of defendant's, which included this land, defendant brought forward the survey now in question and, assert-

ing it was not caveated, obtained a patent which he presented afterwards to the board, on his trial with Hughs, to show that the business was ended by the state's patent.

*Wilson* objected to such evidence. Any *caveat* entered by a third person, as Mr. Hughs, had it even been against this survey, which is not pretended, nor the proceedings on such *caveat,* is no evidence in this cause. The parties to that cause are not the parties to this, nor do the plaintiffs claim under Mr. Hughs, nor is the land claimed by the plaintiffs the same land that was claimed by Mr. Hughs; therefore a determination in that cause is no evidence in this. If we suppose an advantage to have been taken of Hughs, yet none was taken of plaintiffs; they never caveated defendant's survey nor claimed the lands now in dispute against the defendant before the Board of Commissioners. Defendant was not obliged to give them notice of the time of his taking out a patent.

Plaintiffs' counsel. This evidence is offered to show that defendant was guilty of fraud and imposition on the officers when taking out his patent; and fraud will vacate every kind of instrument.

PER CURIAM. JOHNS, C. J. The design of the plaintiffs is to impeach defendant's patent, which we think they are entitled to do, claiming part of the lands in it; but if Hughs only claimed the land, then it would have been among third persons, and the objection would have been a proper one.

After a very lengthy argumentation, the following charge was given to the jury by JOHNS, C. J.

Gentlemen of the jury, after this cause has been so fully discussed by the counsel for the plaintiffs and defendants, it is the duty of the court to call your attention to some of the leading and principal points discussed in the cause. This is an action brought by the lessee of Charles Brown and Nancy Brown, his wife, and Allen Smith and Sally, his wife, against William Stayton. From what has been said, you understand the disputed lands lie between the patent lands, called "Wallace's Lot," and the dotted lines of the resurvey, being the outside lines of the same. The plaintiffs have stated it otherwise, that that part also of defendant's survey which [is] [1] included by the patent lines [is] also in dispute; but we think the defense ascertained puts the question only as to the lands lying between the dotted lines and the west lines of the patent called Wallace's Lot. Before I leave this subject: there is no dispute nor difficulty as to those lands in de-

---

[1] Manuscript reads, "which are included by the patent lines are also..."

fendant's survey covered by the west side of the patent; the plaintiffs may take judgment for those lands.

You are first to consider whether plaintiffs have shown a good title; so far as we have been able to examine the objections to it, none are valid unless defendant's title is good and is a better or prior title. We apprehend the leading point is, which of the two surveys is oldest, the one made for William Wallace or the one made for defendant. This is a question of fact, and, whatever is our opinion, we ought not to disclose it. If plaintiff's is first, he should have a verdict; if defendant's is first, then you are to turn your minds to other objections to his title.

It has been objected that defendant's warrant is a located warrant, and though it has been admitted that, if there were no lands at the place called for in it on which it could be located, then it became a general warrant and might be laid elsewhere; yet it is said, if the warrant was laid at such place in part, it cannot be removed. We cannot say that defendant ever did lay it on a smaller piece elsewhere, but if he did, he could never abandon it. I do not pretend to say there is any evidence of this, but if you are of that opinion, your verdict should be for the plaintiff. It has been also insisted that the warrant of resurvey, being not only to resurvey Wallace's Lot but to add contiguous vacancies, etc., is located and would attach from the date of the warrant. We differ from plaintiffs' counsel. We think the warrants of resurvey are not located warrants and do not attach upon the lands until an actual survey is made; but it would be otherwise if a resurvey warrant mentioned a vacancy on the east or west of the original tract; the leading point is therefore as to the times of the surveys. Plaintiffs' warrant was a common warrant, and so is Mr. Stayton's also, if it has not been laid at the place called for in it. The subject has been exhausted by the counsel, and you will decide this cause according to justice.

Verdict for the plaintiffs.